CRANE (ERRETT v.). See Case No. 4,523.
CRANE (HARVEY v.). See Case No. 6,178.

## Case No. 3,354.

### CRANE v. McCOY et al.

[1 Bond, 422.][1]

Circuit Court, S. D. Ohio. Dec. Term, 1860.

INJUNCTION—REMEDY AT LAW—INTERFERENCE BY SHERIFF WITH MARSHAL —MARSHAL'S RETURN— REPLEVIN — CONCURRENT JURISDICTION — RECEIVER.

1. It is not enough to defeat jurisdiction in equity that there was a remedy at law: the remedy must be complete, prompt, and efficient.

2. A chancellor in the exercise of a just discretion, upon an application for an injunction, may properly take into consideration the existence of an actual conflict or imminent danger of a violent collision between two authorities, in determining the expediency of awarding this preventive process.

3. If the rights of a party can only be enforced at law by long continued, strenuous, and expensive litigation, and those rights can be more promptly and efficiently asserted in equity, a stringent reason is offered for the application of its power.

4. The sheriff of a county has no right to disturb or in any way interfere with the possession of property legally in the possession of an United States marshal.

5. The return of an United States marshal is conclusive of the facts which it sets forth, and its truth can not be collaterally impeached.

6. Property which has been replevied, does not pass into the possession of the plaintiff after he has given a bond which has been accepted by the officer, until there is a formal delivery of the property by the officer.

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

7. Where there is concurrent jurisdiction in courts, the tribunal first obtaining jurisdiction of the subject or person shall retain it.

[Cited in Bruce v. Manchester & K. R. Co., 19 Fed. 345.]

8. The application for the appointment of a receiver is always addressed to the sound discretion of the court to which it is made. As a general rule, such appointment will be made in all cases where the interests of parties seem to require it.

Lee & Fisher, for complainant. Mr. Probasco, for defendants.

OPINION OF THE COURT. The questions before the court arise on a motion to dissolve the injunction, which has been granted in this case, and to rescind the order for the appointment of a receiver. For obvious reasons it will be improper, in the decision of this motion, to pass on any questions of law or fact directly involving the title to the property in controversy, and which will necessarily come under the consideration of the court on the final hearing.

The bill in chancery in this case was filed on the 4th of January, instant, by David Crane, a citizen of the state of Tennessee. It states, in effect, that on the 1st inst. he purchased twelve hundred and twenty-four barrels of apples, and three hundred and thirty-two barrels of onions of D. Harper & Son, commission and produce merchants of Cincinnati, for the sum of $2,429.31, for which he gave his two negotiable promissory notes for equal amounts, payable in thirty and sixty days; that he was in possession of said articles, and had shipped a part of the apples to Nashville, his place of business, and had sold a few barrels in Cincinnati; that on the 2d of January, W. G. McCoy and Roswell Gould sued out of the superior court of Cincinnati a writ of replevin against D. Harper & Son, upon which the sheriff of Hamilton county took one thousand one hundred and seventy barrels of said apples and delivered them to said McCoy and Gould; that said Crane thereupon sued out of this court a writ of replevin for said apples against said McCoy and Gould, and they were taken by the marshal and were in his possession when Libbeus L. Harding obtained a writ of replevin from said superior court of Cincinnati against said Crane and Lewis W. Sifford, the marshal, and that by the aid of a posse, and by forcible means, the sheriff of Hamilton county intervened to prevent the delivery of said property by the marshal to the said Crane; that a collision had already occurred between the marshal and the sheriff, and that bloodshed was anticipated in the attempt by the marshal to retain possession, and the attempt of the sheriff to deliver the property to said Harding. The bill further alleges, that the purchase by said Crane of Harper & Son was in good faith, and for a full consideration; that said Harding has no just claim to the property and never was in

actual possession thereof; that said apples are perishable; and in view of the collision which had occurred, the further violence threatened, and the further and endless litigation likely to ensue from the conflict between the marshal and the sheriff, and for the protection of the rights of said Crane, he prays the court to appoint a receiver to take possession of the property, and hold the same subject to the further order of this court, and that an injunction issue restraining the sheriff of Hamilton county, and all other persons from further interference with said property, until the rights of all the parties can be finally settled. The bill is duly verified by the oath of the complainant, Crane, and as to some of the facts, by the affidavit of William M. Manson, the deputy marshal intrusted with the execution of the writ of replevin issued from this court. On the 4th of January, instant, an order for an injunction and the appointment of a receiver was made by the judge of this court. In pursuance of that order an injunction bond in the sum of three thousand dollars has been duly executed and filed by said Crane, and a writ of injunction has been issued and served. The receiver appointed by the court has accepted the appointment and taken the necessary oath, and given bond for the faithful performance of his duties, in the sum of $3,000. He has also filed his first report setting forth that he is in possession of the property, and pursuant to the order of the court, has given public notice that said apples will be offered for sale on the 14th of January, instant. Several affidavits have been filed by the defendants to prove that the complainant, Crane, never had any legal title or claim to the property in question. These affidavits are presented in behalf of L. Harding, who is a defendant in this bill, and who is the plaintiff in the last action of replevin brought in the superior court of Cincinnati to obtain possession of the property. These affidavits show a sale of the apples by D. Harper & Son to McCoy & Co. on the 14th of December last on terms set out in the affidavit of McCoy; and that on the 15th of December, Henry Harper, one of the firm of Harper & Son, for reasons which do not appear, notified McCoy & Co. that he would not abide by the agreement made on the preceding day for the sale of said apples. It also appears that there was a controversy as to the right of property, as between said Harper & Son, and said McCoy & Co.; the latter claiming a right thereto, and the former denying their right, and asserting property in themselves; that while this controversy was pending, the sale of the apples was made by Harper & Son to Crane, and possession given, though the apples still remained in the warehouse of Harper & Son, on Walnut street; that on the 2d of January, McCoy & Co. sued out a writ of replevin from the superior court of Cincinnati, under which the sheriff took the apples, and delivered them to McCoy & Co., who gave a bond, as required by the statute, with J. W. Patrick and L. Harding as their sureties; that McCoy & Co. assigned to said Harding the sheriff's order on Harper & Son for the delivery of said apples; that on the 3d of January the complainant, Crane, sued out his writ of replevin from this court against said McCoy & Co., under which the marshal took the apples still remaining in the warehouse of Harper & Son, and upon the execution of a delivery bond by said Crane was attempting to deliver possession to Crane; that on the same day, January 3, the said Harding claiming possession under an assignment of the delivery order given by the sheriff to McCoy & Co., as already stated, sued out a replevin from the superior court of Cincinnati, in the service of which, by the sheriff, the difficulty or conflict, which will be hereafter noticed, occurred. And at this stage of the proceedings, the complainant, Crane, filed his bill, invoking the aid of this court as a court of chancery.

The defendants have filed their motion to dissolve the injunction, and to rescind the order for the appointment of a receiver. The grounds of this motion are substantially: 1. That the court had no jurisdiction to award an injunction, and appoint a receiver; 2. That there was neither in law nor in fact any conflict between the marshal and the sheriff, rendering the interposition of this court proper or necessary; 3. That the sheriff has lawfully a right of possession, as against the marshal and the complainant Crane. In adverting to these grounds for dissolving this injunction, it will not be necessary, and perhaps would be improper, on this preliminary motion, to attempt minutely to consider all the facts presented to the court by the affidavits and exhibits in the case. The questions presented as to the title to this property will come more properly before the court on the final hearing, and can not now be satisfactorily settled on the ex parte evidence presented by the parties. If the judge, in the just exercises of his powers as a chancellor, had jurisdiction to make the order in question, and a case is made, which, prima facie, justified the allowance of an injunction, and the facts now before the court require, for the purposes of equity, that the injunction should not be dissolved, the present motion can not prevail.

If, as insisted by the defendants' counsel, the judge had no rightful jurisdiction to make the order in question, the injunction must be dissolved. The objection on this ground is that the complainant had an adequate remedy at law, in the action of replevin which was pending, or by an action of trespass against the plaintiff in the action of replevin, and the sheriff who executed the process, if they were wrong-doers. The sixteenth section of the judiciary act of 1789 (1 Stat. 82) prohibits suits in equity where there is a plain, adequate, and complete remedy at law.

The construction of this statute has frequently been under review by the supreme court of the United States. In the case of Boyce's Ex'rs v. Grundy, 3 Pet. [28 U. S.] 210, the court say, in reference to that section, that it had been often and uniformly held, "that it is merely declaratory, making no alteration whatever in the rules of equity on the subject of legal remedy. It is not enough that there is a remedy at law; it must be plain and adequate; or, in other words, as practical and as efficient to the ends of justice, and its prompt administration, as the remedy in equity." It will not be necessary to refer to other cases in that court, in which the same doctrine has been even more broadly recognized and asserted. It is not enough to defeat jurisdiction in equity, that there was a remedy at law. The remedy must be complete, prompt, and efficient. And it requires no argument to show, in reference to the case before the court, that the law did not afford such a remedy to the complainant. In the first place, without noticing specially all facts, it is clear that at the time the order for the injunction issued, a collision had occurred between the marshal and the sheriff. The marshal asserted his rightful possession of the property, and the sheriff insisted on his right to take it from his possession, under the process from the state court, and was prepared to enforce that right by the use of force, if necessary. Now collisions between the federal and state authorities are always unpleasant, and greatly to be regretted, and, when possible, to be avoided. And, it seems to me, the complainant by resorting to the peaceful remedy of an injunction, and thus avoiding further, and possibly violent and bloody conflict, is entitled to commendation rather than censure, and has not thereby injured his standing in a court of equity. It is also clear, that a chancellor in the exercise of a just discretion, upon an application for an injunction, may properly take into consideration the existence of an actual conflict, or imminent danger of a violent collision between the two authorities, in determining the expediency of awarding this preventive process. And so, too, if the rights of a party can only be enforced at law by long continued, strenuous and expensive litigation, and those rights can be more promptly and efficiently asserted in equity, a stringent reason is offered for the application of its power. In reference to the controversy between these parties, it is obvious that there would have been much litigation at law, before their rights could have been finally settled; whereas, by a resort to a court of chancery, all necessary parties being brought in, the rights of all can be fully and satisfactorily adjusted.

But it is further insisted in support of the present motion, that this court had full power, as a court of law, to enforce its own process, and protect its officers in the execution of that process. There is no doubt of the existence of this power in this court. If its officer is obstructed or interfered with in the just exercise of his duties, the court may interpose and punish such unwarranted interference, as a contempt of its authority. But, for many obvious reasons, the exertion of this power is to be avoided, unless there is the most stringent necessity for it. And especially is this true, when the conflict of authority may involve the courts of the Union and the courts of a state in embarrassing and unpleasant collisions.

I will, however, pursue this subject no further. I am clear in the opinion, that in view of the facts of this case, as set forth in the complainant's bill, and as they appear from the affidavits and exhibits in the case, the order for the injunction was a proper exercise of a jurisdiction pertaining to a judge of this court, in the exercise of his powers as a chancellor. And in this connection, I may properly notice the fact, that his honor, Judge McLean, on one occasion within my recollection, strongly stated it as his opinion, that as a general rule in these conflicts of jurisdiction involving the right to the title and possession of property, the remedy afforded by a court of equity is greatly to be preferred to protracted and vexatious litigations at law. The views thus presented, are upon the assumption that the marshal, at the time the sheriff attempted to serve the writ of replevin sued out by Harding against Crane and Sifford, was in the lawful possession of the property in question, and that the sheriff, therefore, had no right to seize it on the process in his hands; and that his attempt to seize it, under the circumstances referred to, and in view of the probable results of his action, presented a state of affairs rendering it proper and necessary for Crane to resort to chancery, and justifying the order of the court made in the case. It is insisted, however, by the counsel for the defendants, that there is nothing in the facts before the court from which the inference can be fairly drawn, that there was any actual conflict as between the marshal and the sheriff. It is argued, that the property, when the sheriff attempted to serve the writ of replevin sued out by Harding, was in the possession of Crane, and not of the marshal, and therefore subject to seizure by the sheriff under the writ in his hands. If this proposition is sustainable, it is clear the sheriff had a right to take the property, and the marshal was wrong in making any opposition to it. If, on the other hand, the property was legally in the possession of the marshal under the writ of replevin issued from this court in the case of Crane against Gould and McCoy, the sheriff had no right to disturb or in any way interfere with the marshal's possession. How stands the fact as to the possession of this property at the time the sheriff attempted to serve the writ of replevin? The return to the writ issued from this court, in the case of Crane against Gould and McCoy,

sets forth, that the marshal by his deputy, pursuant to the command of the writ, took 1,174 barrels of apples, and caused them to be duly appraised; and having taken a delivery bond from the plaintiff, Crane, pursuant to the statute, he commenced the delivery of the property to him, and had delivered seventy-five barrels, when he was obstructed and prevented from delivering the other part by the interference of the sheriff of Hamilton county, and others. He then recites the fact that a receiver had been appointed by this court, who has in possession 1,099 barrels of the apples. This return clearly shows that no more than seventy-five barrels were delivered to Crane, and that the balance remained in the possession of the marshal, and passed from him into the possession of the receiver. This return of the officer is conclusive of the facts which it sets forth, and its truth can not be collaterally impeached. And it proves that as to 1,099 barrels of the apples, the possession was in the marshal, and not in Crane. And being thus in the hands of the marshal, under legal process, the sheriff had no right to take them under the writ of replevin in his hands.

It is insisted, however, that by operation of the statute of Ohio, upon Crane's giving bond to the marshal, the property replevied passed into the possession of Crane, and was therefore subject to the operation of the sheriff's writ of replevin. On this point no authorities were cited, and it may be presumed there are none to sustain the position. In the absence of any authoritative decisions to the contrary, I incline to the opinion that after the bond is given and accepted by the officer, there must be a formal delivery of the property by the officer. The return of the officer before referred to, shows only a delivery of seventy-five barrels of the apples. It is insisted in argument, that this partial delivery by the marshal is by implication to be deemed as a delivery of all the apples to Crane, and that the possession thereby passed to him, and was subject to the action of the writ of replevin sued out by Harding, and it is also contended that the giving the delivery bond by Crane, and its acceptance by the marshal, transferred the possession to Crane. The return of the marshal showing possession in him of all the apples, except the seventy-five barrels delivered to Crane, is to be viewed as conclusive of that fact, and the point referred to is not material in the decision upon the question before the court. It was no doubt competent for the marshal to have delivered the entire quantity of the apples in bulk, as they there remained in the warehouse. But was he bound to make the delivery in this way? It occurs to me, that it was in the discretion of the officer in what manner the delivery should be made, and in the exercise of this discretion he was properly controlled by the circumstances of the case. It appears that Crane was pre-

pared to remove the apples to the river landing for the purpose of shipment, and drays were in readiness to take them. The marshal seems to have thought it was his duty to deliver them on the pavement, in front of the warehouse. I am unable to perceive that there can be any legal objections to this mode of delivery, having regard to the facts existing and known to the marshal. These facts warranted the apprehension, that there might be, and probably would be, some interference in the attempt to give the possession to the claimant of the property.

The doctrine that where there is concurrent jurisdiction in courts, the court first obtaining jurisdiction of the subject or person shall retain it, is not controverted, and is too well settled to be disputed. This doctrine applies clearly to the case under consideration. There was a legal possession in the marshal of that portion of the property in question, of which there had been no actual delivery to Crane. That possession could not be rightfully interfered with or disturbed by process from another court; and the property was subject to any order which the court having it in possession, might deem it proper to make, in accordance with law and the usages of courts. The application for the appointment of a receiver is always addressed to the sound discretion of the court to which it is made. As a general rule, such appointment will be made in all cases where the interests of parties seem to require it. The posture of this controversy, before referred to, a conflict existing, with an apprehended violent collision, and a probability of fierce and long continued litigation at law, was a sufficient reason for the appointment of a receiver, and the order for the injunction. But in addition to this consideration, the perishable nature of the property in contestation could not be overlooked. The apples were liable to rapid decay, and if they were to be the sport of interminable struggles for possession, and cross actions of replevin, before these could be ended, they would be entirely valueless. Hence, it would seem obviously to be for the interest of all concerned, that they should be withdrawn from the operation of such a warfare, and disposed of in a way most advantageous to all. The order for the appointment of a receiver, who has taken an oath for the faithful discharge of his duties, with the superadded security of a bond, amply secures this object. In the meantime, all the questions of title to this property are reserved until there can be a full and final hearing, and a satisfactory decision settling the rights of the parties. The order of the court requires the proceeds of the property to be placed under its order, and it will be paid to those who establish a legal right to it.

Upon the whole, I see no sufficient reason for dissolving the injunction, or vacating the order for the appointment of a receiver. The motion is therefore overruled.